IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID SIMON, et al., | CASE NO.: 1:09 CV 631 |
| Plaintiffs, | |
| v. | JUDGE DONALD C. NUGENT |
| CONTINENTAL AIRLINES, INC., | |
| | MEMORANDUM OPINION |
| Defendant. | |

This case is currently before the Court on the cross motions of Plaintiffs and Defendant Continental Airlines, Inc.'s ("Continental") for summary judgment. (ECF # 22 and 24, respectively). The motions are now fully briefed and ready for disposition. Having reviewed the briefs and fully analyzed the facts and law applicable in this case, Defendant Continental's Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED.

## FACTS[1]

In the First Amended Class Action Complaint (ECF #19) filed by Plaintiffs David Simon, Gary Berk, Jean Heflich, and Evelyn Smith against Defendant, Continental Airlines, Inc., Plaintiffs allege a breach of contract claim on their own behalf, and "as representatives of a class

---

[1] The facts as stated in this Memorandum and Order are taken from the Parties' submissions. Those material facts that are controversial and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

consisting of all persons who have been charged $75 for using Continental's frequent flyer program within three weeks of travel, and the class of all persons who have been denied flights on Continental for 25,000 miles, but offered such flights for a charge of 50,000 miles and the class of all persons who were charged $150 to cancel a frequent flyer trip." (ECF #19, ¶1).

Plaintiffs assert that they are customers of Continental Airline and members of its frequent flyer program. (ECF #19, ¶12). They alleges that when they joined Continental's frequent flyer program they were "informed and agreed that when they earned 25,000 frequent flyer miles that he [sic] would receive a free non-stop round-trip with no additional charges, if those flights were available." (ECF #19, ¶13). Plaintiffs do not state how they were "informed," who "informed" them, or how they manifested their agreement to these terms. Plaintiffs include a copy of a Continental Airlines' frequent flyer brochure and the "fine print" from that brochure, as Exhibits to the Amended Complaint.[2]

All of the Plaintiffs allege that they have earned more than 25,000 miles with Continental's frequent flyer program. Mr. Simon alleges that he attempted to purchase a non-stop trip from Los Angeles, California to Cleveland, Ohio using his miles, but was told those flights were only available for 50,000 miles. (ECF #19, ¶15, 16). Mr. Simon alleges that January is not a peak time of year for travel to Cleveland, Ohio and that he learned that there were many empty seats on the flights that he desired. (ECF #19, ¶¶ 17-18). He claims to have "booked connecting flights on Northwest Airlines, a partner of Continental for 25,000 miles, but was charged $75.00 because the booking was made within three weeks of travel." (ECF #19,

---

[2] Plaintiffs' counsel has submitted his Declaration stating that the brochure attached to the Amended Complaint is a brochure that he obtained from Continental Airlines when flying on that carrier.

¶19).

Plaintiff Berk alleges that he was charged $150 to cancel a One-Pass Trip using his frequent flyer miles when an illness in the family caused him to cancel his trip. (ECF #19, ¶21). Plaintiff Heflich alleges that she was charged more than 25,000 miles on a Continental One-Pass trip. (ECF #19, ¶22). Finally, Plaintiff Smith alleges that while she has more than 25,000 miles, she has not yet booked a One-Pass trip. (ECF #19, ¶23).

Plaintiffs allege that the parties had a contractual arrangement and because they earned more than 25,000 miles they had earned a non-stop free trip. (ECF #19, ¶36). Further, Plaintiffs allege that "Defendant had a contractual obligation to provide travel as agreed and not to charge excess mileage and had no authority to charge a $75 late reservation fee." (ECF #19, ¶37). Finally, Plaintiffs contend that Defendant had a contractual obligation not to charge an unreasonable fee for changing or cancelling a One-Pass trip and breached that obligation by imposing a cancellation/change fee of $150. (ECF #19, ¶38). Thus, Plaintiffs contend, Defendant's actions breached the contract they had with Plaintiffs.

Plaintiffs and Defendant have both moved for summary judgment. Both motions have been fully briefed and are ready for decision.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

3

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

4

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Fed. R. Civ. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

If a party fails to object before the district court to the affidavits or evidentiary

5

> materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

### A. Plaintiffs' Motion for Summary Judgment

Plaintiffs' Motion is based on their argument that the contract in question is a unilateral contract. Specifically, Plaintiffs contend that Continental made an offer to airline customers that if a traveler accrues 25,000 miles of air travel on Continental or a participating partner airline, the customer would earn one round-trip frequent flyer "One-Pass" trip. Plaintiffs allege that Plaintiffs accepted Continental's offer by flying more than 25,000 miles and that once Plaintiffs

6

accepted the offer, the contract was formed and could not be unilaterally changed by Continental. Plaintiffs' contention that the contract was unilateral is based upon their reading of the brochure that was attached to the Amended Complaint.[3]

Plaintiffs memorandum in support of its Motion for Summary Judgment contains various snippets and random rules regarding unilateral contracts and option contracts with citations to numerous cases from varying jurisdictions. None of those cases have any relevance to the breach of contract claim alleged in the Amended Complaint. The brochure regarding Continental's Frequent Flyer program is not an offer of a unilateral contract seeking acceptance by performance over time. Based upon the limited information in the brochure, a customer cannot join the Continental Frequent Flyer program by flying 25,000 miles. The potential member must sign up and enroll in the program. Thus, this is a bilateral contract where the Plaintiffs "accepted" the "offer" by enrolling in the OnePass program.

Moreover, Plaintiffs have not submitted evidence sufficient to support their breach of contract claim. In order to state a claim for breach of contract, a plaintiff must establish that there was a contract and show (1) the contract's terms; (2) that defendant breached the contract; and (3) that defendant's breach caused the plaintiff injury. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). In this case, as has been noted previously by this Court in its opinion denying

---

[3] The brochure attached to the Amended Complaint was obtained by Plaintiffs' counsel. There is no evidence showing that the individual plaintiffs ever read that particular brochure and no evidence from Plaintiffs regarding when each plaintiff joined the Continental frequent flyer program. Further, as is evident from the face of the brochure, the brochure does not contain the entire agreement. Moreover, Plaintiffs have not attached the rest of the agreement (apparently all persons are directed to the Frequent Flyer section at continental.com for full details of the Frequent Flyer program) to their motion for summary judgment.

Defendant's Motion to Dismiss, Plaintiffs have failed to submit the entire agreement at issue to the Court. On its face the brochure relied upon by Plaintiffs directs customers to continental.com for the complete rules and regulations concerning the frequent flyer program stating that "Your membership is subject to terms and conditions set forth in the Frequent Flyer section at continental.com." Accordingly, Plaintiffs have failed as a matter of law to establish their breach of contract claim and their Motion for Summary Judgment must be denied.

B. Defendant's Motion for Summary Judgment.

Continental has moved for summary judgment on the grounds that the uncontroverted evidence demonstrates that the actions complained of by Plaintiffs, *i.e.*, being unable to obtain reward tickets for 25,000 frequent flyer miles, being charged a fee to redeposit his frequent flyer miles to his OnePass account after cancelling a reward ticket, and being charged a fee for booking a reward ticket one day before his flight, do not support a claim for breach of contract as all of those "complaints" were and are expressly permitted by the OnePass terms and conditions. Continental supports its Motion for Summary Judgment with the affidavits of Mary Alice Martinez, Mark Sullivan and Michael Van Auken, all managers with Continental who have authenticated the relevant OnePass documents attached to their affidavits.

Moving first to Plaintiffs' claim that Continental has breached its contract with Plaintiffs by charging them more than 25,000 miles for the flights they wanted. Both Plaintiffs David Simon and Jean Heflich assert that they were charged more than 25,000 miles for the reward flights they wanted and that Continental's failure to permit them to book their flights for 25,000 miles breached the contract they had with Continental. While Plaintiffs offer no evidence

8

concerning when they joined the OnePass program, Continental has submitted affidavits which provide that information and demonstrate that the OnePass program has always been subject to capacity controls limiting the number of seats available for reward travel, including the points in time when Mr. Simon and Ms. Heflich joined the frequent flyer program. Similarly, the brochure Plaintiffs attach to their amended complaint also states that there are capacity controls and limitations on standard reward seats.

Plaintiff Simon complains that he wanted a flight from Los Angeles to Cleveland but could not obtain a seat for 25,000 frequent flyer miles on the flight he wanted. Instead, he booked a flight on Northwest Airlines, which was a Continental partner at that time, for 25,000 miles, with a connecting flight. Mr. Simon made this flight reservation on January 9, 2009 for a January 10, 2009 flight.[4] Plaintiff Heflich complains that she was charged more than 25,000 miles on a Continental OnePass trip but offers no other details. Continental records indicate that on December 22, 2005, Ms. Heflich booked two reward tickets for travel from Cleveland to Fort Myers, Florida on March 3, 2006 with a return trip on April 1, 2006 and redeemed 50,000 miles for each ticket. On February 1, 2000, Ms. Heflich redeemed 40,000 OnePass miles and booked a reward ticket for travel from Cleveland to Fort Myers, Florida on March 23, 2000, returning on April 3, 2000. The affidavits submitted by Continental demonstrate that the terms of the OnePass program in January 2009, February 2000, and December 2005, when Plaintiffs booked their reward flights, all provided for capacity controls. Thus, it is clear that 25,000 mile reward seats may not be available when OnePass members seek bookings. While annoying to the

---

[4] Plaintiffs do not point to any provision in any iteration of the OnePass program which provides that customers would be entitled to a "non-stop" reward flight.

9

membership, this paucity of 25,000 mile reward seats, does not breach the terms of the OnePass program.

Mr. Simon also complains that he was charged a $75 close in booking fee when he booked his reward seat on January 9, 2009 for travel on January 10, 2009. Mr. Simon alleges, without any support, that such fees breach the terms of the OnePass program. Defendant states that Mr. Simon enrolled in the OnePass program on February 10, 1994. At that time the OnePass terms did not specifically provide for a close in booking fee, although the program specified that members could request rewards over the phone and must allow two weeks for delivery. If members wanted express delivery, they had to pay a charge of at least $35 in order to expect delivery in two business days. Thus, even under the terms that existed when he joined the program, Mr. Simon would have had to pay a fee for express delivery and in his case, would not have been able to obtain a reward flight for the following day. In any event, under the terms of the OnePass program when Mr. Simon joined, Continental reserved the right to change any aspect of the OnePass program at any time with 60 days' notice to active members.

In January 2003, Continental began to charge a fee, called a close-in booking fee, when reward tickets were booked close to the date of travel. The $75 fee paid by Mr. Simon in January 2009 was a modified version of former Continental close-in booking fees. Continental states that it provided notice to its OnePass customers of the change of fees and terms of its OnePass program through its website, member statements and promotional materials. On January 9, 2009 the OnePass Program Rules on Continental's website had a section called "Ticketing Options and Service Fees," which provided the various ticket options and applicable fees, including an "advanced booking fee" of $75 for all OnePass members, other than Platinum Elite

members, for booking a reward ticket within 20 days of the flight. As Mr. Simon was not a Platinum Elite member and he booked his reward ticket within 20 days of the flight, he was charged $75. This fee is in accordance with the terms and conditions of the OnePass program and cannot support Plaintiffs' claim of breach of contract.

Finally, Plaintiff Gary Berk complains that he was charged a $150 fee when he cancelled his reward ticket due to a family illness. While Mr. Berk provides no details of his booking, Defendant states that their records show that Mr. Berk booked a flight from Cleveland to Phoenix for travel on July 16, 2009, returning on July 25. On June 22, 2009, the date that Mr. Berk booked the ticket at issue, the applicable OnePass terms and conditions provided that the fee to re-deposit miles to a OnePass account was $150 per transaction for OnePass Members and $0 for Platinum Elite members. As Mr. Berk was not a Platinum Elite member, he was charged $150 to re-deposit his miles when he cancelled is reward booking. Continental notes that the redeposit fee was part of the OnePass program from the date that Mr. Berk enrolled and, while it has changed over the years, Continental provided notice to OnePass members of the various changes over time through the website, member statements and promotional materials. Thus, the imposition of a re-deposit fee in Mr. Berk's case was in accordance with the stated terms of the OnePass program and did not breach the terms of the OnePass program.

None of the actions cited by Plaintiffs constitute a breach of the contract between Defendant and Plaintiffs. Indeed, as Defendant has demonstrated, all of the actions taken by Continental have been in accordance with the terms and conditions of the OnePass program. Accordingly, Plaintiffs' claim of breach of contract fails.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (ECF #22) is DENIED and Defendant's Motion for Summary Judgment (ECF #24) is GRANTED. This action is terminated.

IT IS SO ORDERED.

*Donald C. Nugent*
Donald C. Nugent
United States District Judge

Date: February 4, 2010